**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA
*Ex rel.* Monica McLamore

Plaintiff,

v.

WINN COMPANIES d/b/a
Winn Properties
Six Faneuil Hall Marketplace
Boston, MA 02109

- And -

WINN MANAGED PROPERTIES, LLC
d/b/a WinnResidential
Six Faneuil Hall Marketplace
Boston, MA 02109

Defendants.

Case: 1:16-cv-01274 (E-Deck)
Assigned To : Chutkan, Tanya S.
Assign. Date : 6/23/2016
Description: General Civil Jury Demand

**Filed Under Seal**

**Jury Trial Demanded**

**FALSE CLAIMS ACT COMPLAINT**

***COMES NOW*** Plaintiff United States of America by relator Monica McLamore and Monica McLamore on her own behalf and makes this Complaint of the submission of False Claims to the United States of America for False Claims made by Defendants in regards to violations of Section 8 of the United States Housing Act, 42 U.S.C. § 1437f, *et seq.* and related federal regulations. In support of this Complaint, Plaintiff states the following:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 31 U.S.C. §§3729-33 and pursuant to 28 U.S.C. §§ 1331, 1345.
2. This Court has personal jurisdiction over each Defendant as each Defendant is conducting business with the United States of America in the District of Columbia.
3. Venue lies in the District of Columbia as the cause of action arose therein.

RECEIVED
JUN 23 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## PARTIES

1. The United States of America (hereinafter referred to as "U.S.A.") is a sovereign nation which makes payments to qualified landlords such as Defendants pursuant to The Act and relevant federal regulations.

2. Monica McLamore is an adult resident of the District of Columbia living at 4372 3rd St., SE, Apt. G2, Washington, DC 20032. Ms. McLamore partakes in rental assistance as offered under Section 8 of the United States Housing Act, 42 U.S.C. § 1437f, *et seq.* (hereinafter referred to as "The Act").

3. Defendant Winn Companies d/b/a Winn Properties is a residential real estate and development firm doing business in the District of Columbia.

4. Defendant Winn Managed Properties, LLC is a foreign limited liability company doing business in the District of Columbia as "WinnResidential" and actively managing the relevant property.

## BACKGROUND

5. Each of the preceding paragraphs is incorporated by reference herein.

6. Since 2002, Ms. McLamore has maintained a place of residence at "Atlantic Terrace," *i.e.* "the Property," through a federal housing program under The Act.

7. The Act has created a voucher program in which the Department of Housing and Urban Development (hereinafter "HUD") provides funding to local public housing agencies – referred to as "PHA's" - to provide federal money to be disbursed through these local agencies to landlords who partake in the program. *See* 42 U.S.C. 1437f(o) (1983), *et seq.*

8. PHA's are privately-held organizations and are responsible for administering the Housing Choice Voucher Program under a contract with HUD.

9. Due to the limits of Ms. McLamore's annual income, she has qualified for assistance in payment of rental housing through The Act, specifically through the federal voucher program of 42 U.S.C. § 1437(o).

10. As a result, Plaintiff U.S.A. has covered up to 70% of her rental needs and made payment to Defendants on a monthly basis in excess of $1000.00 per month at times. Ms. McLamore currently pays up to $350 and Plaintiff U.S.A. pays nearly $900 per month.

11. Defendants (collectively referred to as "Defendants" or "Winn") are the owners and operators of Atlantic Terrace which is a conglomeration of buildings inclusive of 4327 3rd St., SE, Washington, D.C. 20032.

12. Atlantic Terrace has at least 196 rent-assisted units available for rent.

13. In addition to Atlantic Terrace, Defendants collectively own and operate several other properties in the District of Columbia which partake in the District of Columbia Housing Choice Voucher Program including, but not limited to:

    a. "Atlantic Gardens,"

    b. "Southern Hills,"

    c. and others.

14. WinnResidential now serves as the property management division of Winn Properties. It currently claims it "has grown by earning a national reputation for excellence over three decades, now ranking as the 5th largest multifamily manager in the United States, as well as the largest manager of affordable and privatized military housing." It also claims it manages "more than 97,000 units on more than 500 properties in 23 states, including ***more than 46,000 units of affordable housing.***" *See*

http://www.winncompanies.com/winnresidential (last visited June 16, 2016) (emphasis added).

15. Upon information and belief, numerous other units owned and operated by Defendants partake in the federal housing assistance programs, *inter alia*, 42 U.S.C. 1437(o).

16. With more than 46,000 units of affordable housing, Defendants collect significant federal money through Section 8 of The Act, notably through 42 U.S.C. § 1437(o)'s voucher program, as administered and distributed by the District of Columbia Housing Authority, and other state PHA's.

**THE STATE OF ATLANTIC TERRACE APARTMENTS**

17. Each of the preceding paragraphs is incorporated by reference herein.

18. Atlantic Terrace is in an unsafe and unsanitary state of disrepair and has been in such indecent, unsanitary and disrepair condition since at least August 2012.

19. Since August 2012, Ms. McLamore has consistently complained about the state of her apartments. She has made statements to Winn Companies and WinnResidential management.

20. Instead of properly repairing the defects in the unit, Defendants have systematically made insignificant adjustments to the unit to give the appearance of repairs, while Ms. McLamore and her family continue to live in an unsanitary and unsafe apartment despite regular and repeated complaints for redress.

21. Ms. McLamore lives in a unit with *constant* bug infestation. For example, the following pictures were taken of Ms. McLamore's home in May and June of 2016:



22. This insect infestation does not dissipate with time of day, presence or absence of people within the dwelling, or at any other time. Unless Ms. McLamore performs self-extermination, the image describes every day at Ms. McLamore's apartment at any time of day despite any individual's presence. These pests cohabitate with the residents day in and day out, eating, sleeping, and congregating throughout the home.

23. Despite regular self-help extermination attempts, Ms. McLamore is able to only temporarily eliminate the insects via her own pest control methods until the infestation returns. After temporary extermination, Ms. McLamore is left with enormous amounts of insect droppings and remnants:






24. Ms. McLamore also lives in an apartment with structural problems that have led to continued water intrusion and dangerous mold growth throughout the home:





25. In addition to mold, Ms. McLamore's apartment has obvious wall and ceiling physical defects which Defendants refuse to address.



26. Ms. McLamore's home is constantly infested with vermin including rats and other rodents, which escape into her unit through multiple access points in the walls, ceiling and heating and ventilation unit.



27. Ms. McLamore also lives in a unit that obtains Section 8 federal funding, despite open and obvious electrical defects that cause an unsafe living condition:



28. On May 2, 2016, Ms. McLamore obtained a report from a certified industrial hygienist, Bruce W. Jacobs, MHS, CIH. A true and accurate copy of the written report is attached as Exhibit 1.

29. Mr. Jacobs' report concluded that Ms. McLamore's apartment "does not present a safe and healthful living environment" based upon several concerns including a unit that was "heavily infested with cockroaches," an air handling unit that "showed no evidence of maintenance," "water intrusion," visibly "apparent mold growth," and other significant findings. *See* Exhibit 1.

30. Upon information and belief, other properties identified above that are owned and operated by Defendants are in the same or similar state of unsafe, indecent and unsanitary

conditions. Other units in Atlantic Terrace have been found to have repeated problems with mold and asbestos.

31. Despite these deficiencies, Defendants continue to receive federal funding pursuant to Section 8 of The Act for each unit of Atlantic Terrace and other units.

32. Ms. McLamore should not be forced to live in this condition given her acceptance into Section 8 housing, and the Plaintiff U.S.A.'s distribution of Section 8 funds to Defendants that require Defendants to provide a clean, sanitary, and safe living environment for Ms. McLamore and other Section 8 participants.

**FALSE SUBMISSIONS BY DEFENDANTS**

33. Each of the preceding paragraphs is incorporated by reference herein.

34. Defendants—like all owners of real estate that receive Section 8 payments—must enter into an express written contract known as the Housing Assistance Payments Contract (hereinafter "HAP" or "HAP Contract"). A true and accurate copy of HUD's HAP Contract is attached as Exhibit 2.

35. The HAP Contract is required to be used by all real property owners that seek federal subsidies to rent to individuals such as Ms. McLamore and the tenants of Atlantic Terrace. See Exhibit 2, p. 1 ("Use of this HAP contract is required by HUD. Modification of the HAP contract is not permitted. The HAP contract must be word-for-word in the form prescribed by HUD.")

36. The HAP Contract demands compliance with Health Quality Standards ("HQS") that are set forth in FHA rules and regulations. "The owner must maintain the contract unit and premises in accordance with the housing quality standards (HQS)." Exhibit 2, p. 4. "The PHA shall not make any housing assistance payments if the contract unit does not meet

the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction." *Id.*

37. The HAP Contract further expressly requires Owner Certification of safe and healthy living conditions; "During the term of this contract, the owner certifies that: a. The owner is maintaining the contract unit and premises in accordance with the HQS." Exhibit 2, p. 6; *see also* "The owner must maintain the unit and premises in accordance with the HQS." *Id.* pp. 9-10.

38. Specifically, but not exhaustively, 24 C.F.R. 5.703.

39. The HQS are defined by the relevant FHA regulations. 24 C.F.R. 5.703(f) identifies the physical condition standard for HUD housing that is decent, safe, sanitary and in good repair:

> All areas and components of the housing must be free of health and safety hazards. These areas include, but are not limited to, air quality, electrical hazards, elevators, emergency/fire exits, flammable materials, garbage and debris, handrail hazards, infestation, and lead-based paint. For example, the buildings must have fire exits that are not blocked and have hand rails that are undamaged and have no other observable deficiencies. The housing must have no evidence of infestation by rats, mice, or other vermin, or of garbage and debris. The housing must have no evidence of electrical hazards, natural hazards, or fire hazards. The dwelling units and common areas must have proper ventilation and be free of mold, odor (e.g., propane, natural gas, methane gas), or other observable deficiencies.

40. Ms. McLamore's unit and Atlantic Terrace fail to meet these and other regulations because Ms. McLamore's unit and other units at Atlantic Terrace are in a state of unsafe and unsanitary disrepair due to the presence of:

    a. mold,

    b. vermin and infestation,

    c. insect infestation,

    d. unmaintained electrical appliances including Heating and Air Conditioning units,

e. and other unsafe, indecent and unsanitary conditions.

41. Since 2002, Ms. McLamore has made numerous requests for redress to her unit for each of the above violations of the FHA regulations. As such, Defendants had actual knowledge of violations with the FHA regulations, but nonetheless expressly and falsely certified that Ms. McLamore's unit (and other likewise deficient units) was in compliance with FHA regulations including 24 C.F.R. 5.703(f).

42. As an example, in August of 2012, Ms. McLamore had a phone call with Monique Lilly-Moore, the resident manager of Atlantic Terrace. During the call, Ms. Lilly-Moore was told repeatedly by Ms. McLamore and her representative about the condition of the apartments, including mold and water intrusion/flooding.

43. Ms. Lilly-Moore indicated that the problem would be remedied. However, no repairs or remediation ever occurred.

44. Defendants engaged in deliberate fraudulent action to continuously represent to Plaintiff U.S.A. that these apartments were in safe, decent and sanitary condition.

45. To the extent Defendants did not willfully act to defraud the federal government, Defendants were deliberately ignorant of the falsity of the certifications that they were making and/or acted with reckless disregard for the truthfulness or lack thereof in signing the HAP Contract.

46. As a result of these false claims submitted, Defendants each gained financial benefit in that the Plaintiff U.S.A. made payments to Defendants for housing subsidization for each unit at Atlantic Terrace that engaged in the DC Housing Choice Voucher Program under 42 U.S.C. § 1437(o).

47. Payments were made to Defendants on a monthly basis for each of these units for more than five years, and payment for an individual unit was often in excess of $900.

48. As such, Defendants have been engaged in a system of fraudulent activity related to the HAP Contract in which Defendants fraudulently certify that Ms. McLamore's unit is in compliance with FHA regulations and the HQS that are required for payment. Plaintiff can further identify exact dates and exact identity of signators for the HAP Contract by Defendants with adequate discovery.

**VIOLATION OF THE FEDERAL FALSE CLAIMS ACT**
**Count I**

49. Each of the preceding paragraphs is incorporated by reference herein.

50. Based upon the conduct, each Defendant is individually liable under 31 U.S.C. § 3729(a), which imposes liability on any person who:

    a. knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    b. knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    c. conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

    d. is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

Any person who performs or fails to perform such an act is liable to the United States Government for a civil penalty of not less than $ 5,000 and not more than $ 10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C.

2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

51. Each Defendant caused false claims to be submitted as stated above, and as a result of these false claims each Defendant benefitted financially to the detriment of Plaintiff USA.

**WHEREFORE**, Relator seeks Judgment be entered in favor of Plaintiff USA for the conduct complained of and in violation of 31 U.S.C. § 3729(a) and for the following relief:

a. each Defendant cease and desist its violations of 31 U.S.C. § 3729(a), and take other action to ensure that any and all submissions and certifications related to Atlantic Terrace and any other property owned and operated by Defendants are not in violation,

b. each Defendant pay an amount equal to three times the amount of damages Plaintiff has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729, *et seq.*,

c. relator be awarded all costs of this actions, including expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) plus the maximum allowance of the proceeds as permitted by 31 U.S.C. § 3730(d);

d. any and all other relief as necessary this Court deems just and proper.

Date: June 23, 2016

(Signatures on Following Page)

Respectfully submitted,

/s/

Jonathan B. Nace, Esq.
ANTONOPLOS & ASSOCIATES
Bar No. 985718
1725 DeSales St., NW, Suite 600
Washington, DC 20036
Office: (202) 803-5676
Fax: (202) 803-5677
nace@antonlegal.com

Christopher T. Nidel, Esq.
NIDEL LAW, PLLC
Bar No. 497059
1615 New Hampshire Ave, NW
Washington, DC 20009
chris@nidellaw.com
202-558-2030 (Tel.)

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues triable herein.

/s/

Jonathan B. Nace, Esq.
Bar No. 985718