UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **Monica McLamore,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**WINN COMPANIES d/b/a Winn Properties,** *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 16-cv-1274 (TSC) |

## MEMORANDUM OPINION

Plaintiff-Relator Monica McLamore brings this False Claims Act ("FCA") suit, 31 U.S.C. § 3729 et seq., against Defendants Winn Managed Properties ("Winn") and Atlantic Terrace Limited Partnership ("Atlantic Terrace"), alleging that Defendants submitted false claims to the U.S. Department of Housing and Urban Development ("HUD") about the living conditions of "Section 8" subsidized units, including her own, at her apartment complex.[1]  *See* ECF No. 32, Sec. Amend. Compl.  For the reasons below, the court will GRANT Defendants' Motion to Dismiss Plaintiff-Relator's Second Amended Complaint.

---

[1] Plaintiff-Relator filed her original complaint under seal as a *qui tam* action on June 23, 2016, Compl., ECF No. 1, and the United States declined to intervene on April 18, 2018.  ECF No. 15.  The court then unsealed the complaint for service.  *See* Order, ECF No. 16.  Since then, Plaintiff-Relator has twice sought leave to amend her complaint.  In granting Plaintiff-Relator leave to file her Second Amended Complaint, the court cautioned her regarding the insufficiencies of her first amended complaint.  *See* Order, ECF 29 at 2–3.  In her Second Amended Complaint, Plaintiff-Relator added Atlantic Terrace Limited Partnership ("Atlantic Terrace") as a new defendant, s*ee Second Amend Compl.*, ECF No. 32, and she added allegations that Defendants submitted fraudulent documents to HUD in 2004 and 2016, *id*. ¶¶ 41–49.

## I.  BACKGROUND

Plaintiff-Relator was a resident of Atlantic Terrace from 2002 until 2019.  Sec. Amend. Compl. ¶ 6.  Atlantic Terrace is a subsidized rental property in the District of Columbia owned and operated by Defendant Winn.  *Id*. ¶¶ 9, 11.  Atlantic Terrace allegedly receives funding under 42 U.S.C. § 1437(o), "Section 8," a federal housing assistance program that disburses funds through local Public Housing Authorities ("PHAs") to participating unit owners who provide affordable housing.  *Id*. ¶¶ 7, 15, 16.  As a Section 8 participant, Plaintiff-Relator typically paid thirty percent of her monthly rent to Defendants; the rest was paid by the federal government.  *Id*. ¶ 10.

To receive Section 8 funding, Defendants must execute Housing Assistance Payments ("HAP") contracts with PHAs.  *Id*. ¶¶ 34, 35; ECF No. 32-2, Ex. 2 at 1.  Under the terms of HAP contracts, unit owners promise to comply with the Health Quality Standards ("HQS") pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3601.  *Id*. ¶ 36; ECF No. 32-3, Ex. 3 at 7.  The HQS mandate that each dwelling within an affordable building be "structurally sound, habitable, and in good repair," free of health and safety hazards, have "no evidence of infestation by rats, mice, or other vermin," "have proper ventilation," and "be free of mold."  Sec. Amend. Compl.  ¶ 38 (quoting 24 C.F.R. 5.703) (internal quotation marks omitted).  Further, the HAP contract states that "[t]he PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction."  *Id*. ¶ 36 (citing Ex. 2. at 4).

Plaintiff-Relator claims her apartment was "unsafe and unsanitary" due to mold, vermin, insects, unmaintained electrical appliances, including heating and air conditioning units, and other unsafe conditions.  *Id*. ¶¶ 17–32, 50.  She alleges that Defendants knew about these defects

since 2002,[2] because she made "numerous requests for redress," to no avail. *Id*. ¶ 51. For example, Plaintiff-Relator states that she contacted Monique Lilly-Moore, the "resident manager of Atlantic Terrace," in 2012 to inform her of flooding and mold in her unit, but "no repairs or remediation ever occurred." *Id*. ¶ 52–53.

Plaintiff-Relator alleges that despite informing Atlantic Terrace management about these defects, Defendants executed two HAP contracts—one in 2004 and another in 2016—falsely certifying that Atlantic Terrace rental units were "in compliance with FHA regulations." *Id*. ¶ 51, 55–56. First, she alleges that on November 1, 2004, Winn Co. Managing General Partner Arthur M. Winn signed a HAP contract falsely certifying that rental units were in "decent, safe and sanitary condition". *Id*. ¶ 41; Ex. 3. Second, that Michael T. Putzinger "signed a renewal [HAP] contract on behalf of Atlantic Terrace to receive federal funding" on January 26, 2016, Sec. Amend. Compl. ¶ 46; Ex. 4, and Michelle Porter signed as an "authorized agent" on behalf of HUD,[3] Ex. 4.

Plaintiff-Relator's theory of liability appears to be that Defendants violated the FCA by deliberately concealing Atlantic Terrace's HQS violations from HUD "for the purpose of obtaining HUD approval and federal payments." *Id*. ¶ 49, 58. Following the court's Order warning Plaintiff-Relator that her first amended complaint lacked "particularity," April 17, 2020, Order at 2–3, she now alleges that Defendants submitted false documents to HUD in 2004 and 2016, *id*. at 41–45, 46–49.

---

[2] Plaintiff-Relator also alleges that Defendants have known about the defects since 2012, *id*. ¶ 56, but for purposes of this motion, the court assumes that the 2012 reference is a typographical error.

[3] Other than attaching the 2016 HAP contract with Porter's signature and title to her Second Amended Complaint, Plaintiff has not alleged any additional information regarding Porter's role as an "authorized agent."

Defendants moved to dismiss Plaintiff-Relator's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state an FCA claim, lack of subject matter jurisdiction,[4] failure to properly allege fraud, and because Plaintiff's claim is precluded by the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A). Defs.' Mot. to Dismiss, ECF No. 34; Defs.' Mem. in Supp., ECF No. 34-1 at 7–24.

## II.     LEGAL STANDARD

### A. Subject Matter Jurisdiction

At all stages of a case, a plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### B. Rule 12(b)(6) Dismissal and Rule 9(b) Fraud

To survive a motion to dismiss pursuant to Federal rule of Civil Procedure 12(b)(6), the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning "the plaintiff pleads

---

[4] Defendants' arguments regarding subject matter jurisdiction are properly brought pursuant to a motion to dismiss under 12(b)(1), and although Defendants have made no such motion, the court may *sua sponte* determine whether it has subject matter jurisdiction. *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Generally, a court does not consider materials beyond the pleadings, but it may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011) (internal quotation marks and citations omitted).

Moreover, Federal Rule of Civil Procedure 9(b), which applies to FCA actions, provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . ." Fed. R. Civ. P. 9(b). To satisfy the requirements of Rule 9(b), a complaint must "set[] forth in sufficient detail the time, place, and manner" of the defendant's "scheme to defraud" the government." *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015)).

### III. ANALYSIS

**A. <u>Statute of Limitations and Relation Back Amendment</u>**

"Section 3731(b) of the FCA establishes a two-pronged statute of limitations for FCA actions." *U.S. ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 73 (D.D.C. 2003) (citing 31 U.S.C. § 3731). An FCA action may not be brought "more than 6 years after the date" of the FCA violation, 31 U.S.C. § 3731(b)(1), or "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the

United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed," *id.* § 3731(b)(2), "whichever occurs last," *id.* § 3731(b).

Once an action has been filed, however, Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Claims asserted in the amended pleading may relate back if:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A)–(C).

"[A]mendments that expand upon or clarify facts previously alleged will typically relate back[,]" but claims that "significantly alter the nature of a proceeding by injecting new and unanticipated claims" are far less likely to relate back. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002). If the amendment is "so substantial that it cannot be said that defendant was given adequate notice . . . then the amendment will not relate back and will be time barred if the limitations period has expired." *U.S. ex rel. Purcell*, 254 F. Supp. 2d at 75 (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. 2d § 1497); *see also*

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 881 (D.C. Cir. 2010) (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("Relation back generally is improper when the new pleading 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth[.]'")).

First, Defendants argue that Plaintiff-Relator's new allegations concerning the 2004 HAP contract, Sec. Amend. Compl. ¶¶ 41–45, are timed barred under 31 U.S.C. § 3731(b) because the alleged fraud occurred more than ten years before the original complaint was filed. Defs.' Mem. in Supp. at 9. Plaintiff's only response is that the court should construe Defendants' arguments as "a motion *in limine* to preclude the inclusion of this evidence." Pl.'s Opp., ECF No. 35 at 9. Defendants are correct; in 2016, when Plaintiff-Relator filed her original complaint, the FCA statute of limitations provision permitted her to allege a false claim based on a contract that was executed no earlier than 2006. 31 U.S.C. § 3731(b)(2). Consequently, she cannot now amend her complaint to allege an FCA violation based on a contract executed in 2004, and therefore her FCA claim based on the 2004 HAP contract is time barred, as against both Defendants. *See, e.g.*, *United States v. Intrados/Int'l Mgmt. Grp.*, 265 F. Supp. 2d 1, 11 (D.D.C. 2002) (holding the statute of limitations barred several of plaintiff's FCA claims because they related to four invoices submitted more than six years prior to the filing of the complaint and statute of limitations was not tolled).

Second, Defendants argue that Plaintiff-Relator cannot amend her complaint and assert claims against Atlantic Terrace because she cannot satisfy the relation back requirements under Rule 15(c)(1)(C)(i)-(ii). Defs.' Mem. in Supp. at 8–9. When a plaintiff amends a pleading to "change[] the party or the naming of the party", Rule 15(c)(1)(C) requires that the newly added defendant receive notice of the action within 120 days of filing, as provided by Rule 4(m), and

that the newly added defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity." Fed. R. Civ. P. 15(c)(1)(C). Given that this case was under seal for more than two years, *see* Order, ECF No. 16, and Plaintiff-Relator added Atlantic Terrace to this action nearly four years after filing her original complaint, Sec. Amend. Compl., Plaintiff-Relator has not satisfied the 120-day notice requirement. Moreover, Plaintiff-Relator does not allege in her Second Amended Complaint, nor argue in her opposition to dismissal, that she mistakenly failed to name Atlantic Terrace in her original complaint. Therefore, none of Plaintiff-Relator's claims against Atlantic Terrace can relate back to her original complaint. *See Halldorson v. Sandi Grp.*, 934 F. Supp. 2d 147, 158 (D.D.C. 2013) (holding that because plaintiff did not allege a mistake as to the identity of defendant, plaintiff's claims against defendant could not relate back to the prior complaint); *Bill Harbert Int'l Const., Inc.*, 608 F.3d at 881 (applying Rule 15(c)(1)(c) in an FCA action to determine whether plaintiff-relator's inclusion of a formerly unnamed defendant in their amended pleading related back to the original complaint).

### B. Particularity and Materiality

A plaintiff bringing an FCA claim must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. Rule 9(b); *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002) (Because the FCA is an "anti-fraud statute, complaints brought under it must comply with Rule 9(b)"). A plaintiff must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *Kowal*, 16 F.3d at 1278). Courts have characterized a plaintiff's burden as providing "the who, what, when, and where with respect to

the circumstances of the fraud." *United States ex rel. Brady Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 68 (D.D.C. 2018) (cleaned up).

FCA section 3729(a) establishes liability for "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). To satisfy a "presentment" claim, a plaintiff must allege factual allegations plausibly showing that the defendant submitted "[1] a claim to the government, [2] that the claim was false, and [3] that the defendant knew that the claim was false.'" *United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 124 (D.C. Cir. 2015); *see also United States ex rel. Jenkins v. Sanford Cap.*, LLC, No. CV 17-239, 2020 WL 5440551, at *6 (D.D.C. Sept. 10, 2020) (concluding that plaintiff effectively made out an FCA claim by alleging that her landlord "receive[d] housing subsidy payments from the federal government despite noncompliance with a HAP contract").

A claim need not be facially false to trigger liability. *United States ex rel. Davis*, 793 F.3d at 124 (citation omitted). Instead, courts have developed two legal "falsity" theories: the implied certification theory and the fraudulent inducement theory. *Id*. (citations omitted). Plaintiff-Relator appears to bring her claim under the implied certification theory, under which "a claim for payment is false when it rests on a false representation of compliance with an applicable federal statute, federal regulation, or contractual term." *United States v. Sci. Apps. Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010). This theory applies when "the claim does not merely request payment, but also makes specific representations about the goods or services provided; and [] the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Univ'l Health Servs., Inc. v. United States*, 579 U.S. 176, 190 (2016).

Plaintiff-Relator's allegation against Winn based on the 2016 HAP contract satisfies Rule 9(b)'s particularity requirement. First, Plaintiff-Relator alleges that Winn submitted a HAP contract signed by Putzinger and Porter to the local PHA in 2016. Sec. Amend. Compl. ¶¶ 46–49; Ex. 4. Second, she alleges that the HAP contract, which requires that each unit be in "decent, safe and sanitary condition," was false due to the unsanitary conditions in her unit. *Id*. ¶¶ 17–32; Ex. 1. Finally, Plaintiff-Relator alleges that Winn knew that the 2016 contract was false because between 2012 and 2019, she notified Winn about the unsanitary conditions in her unit, and Winn did not rectify them. *Id.* ¶¶ 51–54.

A plaintiff-relator must also allege that the false claim was "material to the government's decision to make the payment at issue." *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 86 (D.D.C. 2014) (citing *United States ex rel. Head v. Kane Co.*, 798 F.Supp.2d 186, 194 (D.D.C.2011)). A false statement is only material if the United States "would not have honored the submission for payment on the claim if it were aware of the violation." *United States ex rel. Ervin & Assocs., Inc. v. Hamilton Secs. Grp., Inc.*, 370 F.Supp.2d 18, 46 (D.D.C. 2005). It is insufficient "that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Universal Health Servs., Inc.*, 579 U.S. at 192. A plaintiff-relator must show that the government "consistently refuses to pay claims . . . based on noncompliance with the particular . . . requirement." *Id*. at 195.

While Plaintiff-Relator has alleged particularity as to the 2016 HAP contract, she has failed to allege materiality. She claims that Winn used the 2016 HAP contract to "obtain approval from inspectors for federal payment," Sec. Amend. Compl. ¶ 59, and "[t]he PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA," Ex. 2 at 4. But she does not

allege how the certification process through HUD and the local PHA works. *See United States ex rel. Bid Solve, Inc. v. CWS Mktg. Grp., Inc.*, 567 F. Supp. 3d 59, 69 (D.D.C. 2021) (denying plaintiff's implied false certification claims where plaintiff "allege[d] nothing about the 'specific contents' or timing of the certification and how the certification relates to the claims for payment [the defendant] is allegedly submitting").

Furthermore, Plaintiff-Relator does not claim that the HUD payments to Winn depended on the veracity of the 2016 HAP contract between Winn and the PHA or that HUD "would not have honored the submission for payment on the claim if it was aware of the violation." *United States ex rel. Ervin & Assocs., Inc.*, 370 F.Supp.2d at 45. Defendants argue that, rather than the HAP contract, "HUD's property inspections," "are the basis for payment" under Section 8. Defs.' Mem. in Supp. at 2. Indeed, Plaintiff-Relator acknowledges that HUD conducts inspections in participating Section 8 buildings to determine whether units comply with HUD's living conditions standards, Sec. Amend. Compl. ¶¶ 47, 54, but she makes no effort to clarify whether a unit owner's acceptance into the housing program—and the subsequent payments it receives—rests on these inspections, their certification of the living conditions in the HAP contract, or both. *See* Sec. Amend. Compl; *see also* Pl.'s Memo in Opp. Consequently, Plaintiff-Relator fails to demonstrate that the 2016 HAP contract was material to HUD's payment decision. *See Pencheng Si*, 71 F. Supp. 3d at 93 (determining that although relator provided many descriptions of how defendant "overstated or misstated his qualifications" in grant applications, relator failed to allege facts to show that the State Department "would not have awarded" defendants funding if it knew of these mischaracterizations).

C. **Public Disclosure Bar**

Lastly, Defendants argue that the court should dismiss Plaintiff-Relator's claims because of the FCA public disclosure bar, 31 U.S.C. § 3730(e)(4)(A). *See* Defs.' Mem. in Supp. at 23–

29.  Under the public disclosure bar, FCA actions alleging "substantially the same allegations or transactions . . . [that] were publicly disclosed . . . from the news media" shall be dismissed, unless the "person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).  Defendants argue that "identical" allegations were publicly disclosed by the media, via a WUSA9 news report, before Plaintiff-Relator filed her original complaint.  Defs.' Mem. in Supp. at 25–26 (emphasis omitted).  Defendants claim the news report provided "sufficient information to the government" for it to bring suit, *id*. at 26, and that Plaintiff-Relator is not exempt from the public disclosure bar because she is not an "original source." *Id*. at 28–29.  Because the court has already granted the motion to dismiss for the reasons explained above, *supra*, it need not reach the public disclosure bar question.

## IV.    CONCLUSION

Plaintiff-Relator has not asked for leave to amend a third time, and there is no reason to allow her to do so.  *See* Fed. R. Civ. P. 15(a)(2).  The court will therefore GRANT Defendants' Motion to Dismiss Plaintiff-Relator's Second Amended Complaint: ECF No. 34.

Date: December 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge